## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DONNA R.,[1]

   **Plaintiff,**

           **Case No. 1:20-cv-15449**
  **v.**          **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

   **Defendant.**

### <u>OPINION AND ORDER</u>

  This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Donna R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

I.      PROCEDURAL HISTORY

Plaintiff filed applications for supplemental security income and disability insurance

benefits on May 19, 2016, and May 20, 2016, respectively, alleging that she has been disabled

since January 1, 2012. R. 96−97, 128−29, 209−31. The applications were denied initially and

upon reconsideration. R. 133−38, 142−44. Plaintiff sought a *de novo* hearing before an

administrative law judge. R. 148−50. Administrative Law Judge ("ALJ") Mary Ann Poulose

held a hearing on March 26, 2019, at which Plaintiff, who was represented by counsel, testified,

as did a vocational expert. R. 18−29. In a decision dated August 15, 2019, the ALJ concluded

that Plaintiff was not disabled within the meaning of the Social Security Act from January 1,

2012, Plaintiff's alleged disability onset date, through the date of that decision. R. 18−29. That

decision became the final decision of the Commissioner of Social Security when the Appeals

Council declined review on July 20, 2020. R. 2−8. Plaintiff timely filed this appeal pursuant to

42 U.S.C. § 405(g). ECF No. 1. On June 16, 2021, Plaintiff consented to disposition of the

matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

Federal Rules of Civil Procedure. ECF No. 15.[3] On that same day, the case was reassigned to the

undersigned. ECF No. 16. The matter is ripe for disposition.

II.     LEGAL STANDARD

A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

4

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 34 years old on January 1, 2012, her alleged disability onset date. R. 28. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 21.

At step two, the ALJ found that Plaintiff's narcolepsy with resulting fatigue was a severe impairment. *Id.* The ALJ also found that the following diagnosed or alleged impairments were not severe: fibromyalgia, obesity, depression, anxiety, post-traumatic stress disorder ("PTSD"), and obsessive-compulsive disorder. R. 21−23.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 23.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various additional limitations. R. 23−27. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a medical assistant

and receptionist. R. 27.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* approximately 196,000 jobs as a small parts assembler; approximately 29,000 jobs as an electronics worker; approximately 445,000 jobs as a laundry folder—existed in the national economy and could be performed by Plaintiff. R. 28–29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2012, her alleged disability onset date, through the date of the decision. R. 29.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five, and also challenges the constitutionality of the appointment of the Acting Commissioner; she asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 20; *Plaintiff's Reply Brief*, ECF No. 22. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21.

## IV.    DISCUSSION

### A.    RFC, Mental Impairments, and Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate her mental impairments at different stages of the sequential evaluation and failed to properly consider opinion evidence and her narcolepsy. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 11–26; *Plaintiff's Reply Brief*, ECF No. 22, pp. 20–30. For the reasons that follow, Plaintiff's arguments are not well taken.

8

At step two of the sequential evaluation, the ALJ explained why Plaintiff's mental impairments were not severe, reasoning as follows:

The claimant's medically determinable mental impairments of depression, anxiety, posttraumatic stress disorder (PTSD), and obsessive-compulsive disorder do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [are] therefore nonsevere.

In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria.

The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitations due to psychological impairments. The claimant stated that she needed reminders to take care of her personal care and take medications but not to go places (Ex. 8E). She stated that she did not follow written or spoken instructions well (Ex. 8E). While during a consultative examination she recalled three of three items immediately but none of three after five minutes and recalled four digits forward and three digits backwards, her intellectual functioning was noted as below average, this was a one time consultative examination (Ex. 6F/3). Her treating physicians consistently noted that the claimant's memory was intact (Ex. 5F/1-7, 9-11, 15-20, 23-25, 34-36, 16F/2, 7, and 13-15). All of these factors are indicative of an individual who retains generally intact functioning and support only mild limitations. However, due to the claimant's fatigue, not her mental conditions, the undersigned limits the claimant to unskilled, simple, repetitive, and routine work within the residual functional capacity.

The next functional area is interacting with others. In this area, the claimant has mild limitations. While the claimant's nurse practitioner noted extreme limitation in interacting with supervisors, or moderate limits in interacting with the public, the progress notes nor consultative examinations note any difficulty with social interaction. (Exs. 7F, 8F and 14F). The claimant was noted as cooperative and pleasant (Exs. 1F/5; 2F/18, 21, 24; 3F/2; 6F/2; 11F/2; 12F/5, 15; 16F/2). Her speech was noted as normal (Exs. 1F/5; 16F/2, 6). The claimant's mood and affect were noted as anxious and depressed (Ex. 16F/2, 6, 14). However, the claimant's mood and affect were often noted as appropriate, calm, full, and normal (Exs. 1F/5; 2F/18, 21, 24; 3F/2; 11F/2; 12F/5, 15; 13F/2; 16F/2). The claimant's eye contact was appropriate (Ex. 6F/2). She stated that she had friends (Ex. 6F/3). The claimant did testify that she did not like being criticized and at times had difficulty getting along with others when coworkers or doctors gave her a hard time. However, as noted above, none of the progress notes indicate difficulty with the claimant's behavior, therefore, the undersigned finds that the claimant retains generally intact social interaction with only mild limitations.

9

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has no limitation due to psychological impairments. The claimant stated that she could concentrate for five minutes (Ex. 8E). However, the claimant stated to her doctor that she stopped seeing a psychiatrist due to her psychological symptoms as being stable with her major problem being her fatigue. While the consultative examiner found the claimant to have difficulty performing calculations or serial 3s, this is a one time examination (Ex 6F). Her treating physicians noted repeatedly to have normal attention and concentration. (Ex. 2F/217-19, 3-25; 3F/1-3, and 5F, 1-7). Was noted as alert and oriented (Exs. 3F/2; 13F/2). All of these factors are indicative of an individual who retains generally intact functioning and support no limitations. However, due to the claimant's fatigue from the narcolepsy, not any mental limitations, the undersigned limits the claimant to unskilled, simple, repetitive, and routine work within the residual functional capacity.

The fourth functional area is adapting or managing oneself. In this area, the claimant has a mild limitation. The claimant's judgment and insight were noted as good and intact (Exs. 1F/5; 16F/2, 3). She denied suicidal ideation (Exs. 2F/6, 9, 10; 3F/2). The claimant was noted as well developed and well nourished (Exs. 10F/28, 35, 42, 54; 11F/2). She stated that she could dress, bathe, and groom herself (Ex. 6F/3). The claimant stated that she had no problems taking care of her personal care (Ex. 8E). She stated that she performed household chores (Ex. 8E). While the claimant did have some gambling concerns, she was noted to do better with the gambling and obsessive thoughts since stopping the Abilify (Ex. 5F/34-36). All of these factors are indicative of an individual who retains generally intact functioning and support no limitations.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

R. 22–23. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 23.

Plaintiff contends that the ALJ failed conduct a proper psychiatric review technique ("PRT") at steps two and three and failed to properly consider her mental impairments again at step four. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 15–19; *Plaintiff's Reply Brief*, ECF No. 22, pp. 22–25. Plaintiff specifically contends that the ALJ erred at step two when finding that Plaintiff had no more than mild limitations in the four areas of mental functioning (the "paragraph B" criteria), pointing to record evidence that she believes "suggests a finding of at

least moderate limitations" in these four areas. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 18–19. According to Plaintiff, "[a]fter discarding the mental impairments at Step 2 as being non-severe, the ALJ failed to consider these impairments and their impact upon the Plaintiff's ability to perform work functions *at any other stage of the analysis*." *Plaintiff's Reply Brief*, ECF No. 22, p. 22 (emphasis added).[4]

Plaintiff's arguments are not well taken. It is true that the ALJ did not find any severe mental impairment at step two of the sequential evaluation process,[5] nor did she expressly consider Plaintiff's mental impairments at step three when finding that Plaintiff did not meet or equal a listed impairment. R. 18–20. However, the ALJ did not deny benefits at either of those steps of the sequential evaluation; rather, the ALJ continued with the sequential analysis and expressly considered Plaintiff's mental impairments in the later steps. R. 24–27. Thus, any alleged deficiency at those steps was rendered harmless in this case. *See Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding."); *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step

---

[4] Plaintiff does not argue that she met or medically equaled a specific listed impairment at step three; rather, she simply contends that the ALJ erred in considering the criteria for paragraph B related to her mental impairments. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 11–26; *Plaintiff's Reply Brief*, ECF No. 22, pp. 20–30.

[5] As previously noted, the ALJ found at step two that Plaintiff's narcolepsy with resulting fatigue was severe, R. 21, and the ALJ further explained why Plaintiff's medically determinable impairments of fibromyalgia, obesity, depression, anxiety, PTSD, and obsessive-compulsive disorder were not severe, R. 21–23.

Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *cf. Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) ("[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways.").

> Notably, the ALJ explained at step two that
>
> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 23. As set forth in more detail below, the ALJ specifically considered Plaintiff's mental impairments—including alleged moderate limitations flowing from such impairments—at step four when fashioning the RFC. R. 24−27.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ must assess "the nature and extent" of a claimant's mental and/or physical limitations "and then determine [that claimant's RFC] for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b), (c), 416.945(b), (c); *see also* SSR 96-8p ("A

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). The ALJ must also consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can have no exposure to ladders, ropes, and scaffolds, no unprotected heights, no hazardous machinery, and no commercial driving. She is limited to unskilled, simple, repetitive, and routine work." R. 23. In reaching this determination, the ALJ specifically considered, *inter alia*, Plaintiff's mental impairments:

> The claimant was noted to have normal thought processes, memory or attention span and concentration despite the complaints of sleepiness Ex. 2F/17-19; 5F/1-7; 5F/9-11; 5F/15-20; 5F/23-25; 3F/1-3; 6F/13-15 and 16F/1-8.
>
> The claimant was diagnosed with depression, anxiety, PTSD, and obsessive-compulsive disorder (Exs. 3F/1; 5F/5; 15F). She stated that she experienced flashbacks, intense anxiety, and impulsivity (Ex. 15F). However, the progress notes do not show instances of flashbacks and note that her impulsivity and OCD tendencies were under control. The claimant was prescribed various medications and was noted as stable on Klonopin (Ex. 16F/3). Her depression was good, under control, and improved (Exs. 2F/3; 5F/34; 12F/3). She stated that her obsessive thoughts were under control as well after changing medications (Ex. 5F/34). The claimant was noted as generally stable and doing well (Ex. 16F/3).

13

R. 25. The ALJ also considered the mental health findings of the state agency reviewing consultant, Darrell Synder, Ph.D.; Plaintiff's treating nurse, Aaron Spector, MSN, APN; and the consultative examiner, J. Theodore Brown, Jr., Ph.D., R. 21−23, 25−26, which are discussed in more detail below. The ALJ went on to conclude that the RFC "is supported by the medical record, minimal treatment records showing only conservative treatment, minimal objective findings related to her alleged physical and *mental impairments*, and the record as a whole." R. 27 (emphasis added). This record therefore reflects that the ALJ expressly considered Plaintiff's mental impairments and any limitations flowing from these impairments, finding, *inter alia*, that progress notes do not show instances of flashbacks and that Plaintiff's impulsivity, OCD tendencies, depression, and obsessive thoughts were under control with treatment, that she was noted as generally stable and doing well, and that she was noted to have normal thought processes, memory or attention span and concentration despite complaints of sleepiness. R. 25. As previously discussed, an ALJ need include in the RFC only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted). In the view of this Court, this record contains substantial evidence to support the ALJ's consideration of the effect of Plaintiff's mental impairments on her ability to function and the ultimate RFC determination. *See id*.; *see also Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

In continuing to challenge the RFC determination, however, Plaintiff also contends that the ALJ failed to consider the opinions of J. Theodore Brown, Jr., Ph.D., and James Dwyer,

D.O., and erred in her consideration of the medical opinions of Darrell Synder, Ph.D., and Aaron Spector, MSN, APN. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 19−26; *Plaintiff's Reply Brief*, ECF No. 22, pp. 25−30. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[6] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight,

---

[6] As previously noted, Plaintiff's claims were filed on May 19 and 20, 2016. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

especially when their opinions reflect expert judgment based on a continuing observation of the

patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F.

App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see*

*also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ

should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d

at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at

times even controlling weight") (citations omitted). However, "[a] treating source's opinion is

not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the]

case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20

C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d

Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and

inconsistent with the other evidence in the record."). "In choosing to reject the treating

physician's assessment, an ALJ may not make speculative inferences from medical reports and

may reject a treating physician's opinion outright only on the basis of contradictory medical

evidence and not due to his or her own credibility judgments, speculation or lay opinion."

*Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must

consider the following factors when deciding what weight to accord the opinion of a treating

physician: (1) the length of the treatment relationship and frequency of examination; (2) the

nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the

consistency of the opinion with the record as a whole; (5) the treating source's specialization;

and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still

may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"

*Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225

F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

### 1.    James Dwyer, D.O.

On June 28, 2017, James Dwyer, D.O., a rheumatologist, examined Plaintiff, who complained of fibromyalgia. R. 528−29 (Exhibit 13F). Dr. Dwyer noted Plaintiff's history as follows:

> Patient states that she has had a long-standing history of anxiety and depression and is a former alcoholic having remained off of alcohol for the last 8 years. She's had significant issues with fatigue and lack of adequate sleep and as such she has undergone sleep studies which demonstrated narcolepsy. Her sleep specialist started her on Provigil to "wake her up" and trazodone to "put her to sleep". Despite this she continues to have significant fatigue. She does see a psychiatrist for her anxiety and depression.

R. 528. Upon review of her systems, Plaintiff denied, *inter alia*, anxiety, depression, and non-restorative sleep. *Id*. Plaintiff reported numbness and tingling of the arms, but denied dizziness, headache, numbness/tingling, and weakness. *Id*. Upon examination, Dr. Dwyer noted no clubbing, cyanosis, or edema in Plaintiff's extremities and that noted that Plaintiff walked with a normal gait. R. 528−29. He found no swelling, warmth or erythema in any joints and full range

of motion in her four extremities with the exception of generalized tenderness of the musculature both upper and lower extremities in a distribution consistent with fibromyalgia. R. 529. Plaintiff was alert and oriented with a normal mood and affect. *Id.* Dr. Dwyer assessed fibromyalgia and noted as follows:

> I had a long discussion with Donna and her mother Nancy in regards to her diagnosis of fibromyalgia. *Although she has fibromyalgia symptoms and findings it is clear that her primary problem is related to her anxiety depression and sleep disorder. I indicated to Donna that unless the primary problems are at least stabilized if not eliminated the likelihood of controlling her fibromyalgia symptoms is very low.* She has been unable to get into a regular exercise program and I have encouraged her to pursue aerobic exercises particularly if available warm water exercises. I've also given her the name of a specialist who deals with anxiety disorders. I suggest that she get back to her psychiatrist for management of her medications since she feels that the Provigil is contributing partially to her anxiety. Unfortunately she also feels that the Provigil as the only thing that keeps her awake. Indicated to Donna and her mother a trial of cyclobenzaprine at bedtime may help *but it's unlikely to be of great value without management and control of the other problems as mentioned above.* I'd be happy to see her back in follow-up on an as-needed basis.

*Id.* (emphasis added).

Plaintiff complains that the ALJ "provided no meaningful discussion explaining how Dr. James Dwyer's findings were weighed and considered" and contends that examination findings by another practitioner that Plaintiff "looked tired and diagnosed her with fatigue" supports Dr. Dwyer's opinion. *Plaintiff's Memorandum of Law*, ECF No. 20, p. 21. Plaintiff contends that "since [this] opinion[] clearly establish[es] work related limitations, [it] should have been properly considered. *Plaintiff's Reply Brief*, ECF No. 22, p. 26 (summarizing Dr. Dwyer's relevant statement as "the likelihood of controlling the Plaintiff's fibromyalgia symptoms would be very low until the primary problems are at least stabilized if not eliminated").

Plaintiff's argument is not well taken. Although the ALJ did not expressly discuss Dr. Dwyer's report in this regard, he specifically considered at step two Dr. Dwyer's fibromyalgia

diagnosis and objective findings upon examination, R. 21–22, and considered at step four

Plaintiff's statements to Dr. Dwyer that she had significant issues with fatigue and lack of

adequate sleep, R. 25. Even if the ALJ erred in failing to expressly discuss and weigh Dr.

Dwyer's opinion, any such error is harmless. Plaintiff simply points to this excerpt from Dr.

Dwyer's report without explaining why the RFC does not accommodate any limitation that

Plaintiff believes Dr. Dwyer articulated, nor does Plaintiff identify any additional functional

limitations not already included in the RFC purportedly flowing from Dr. Dwyer's report. *See*

*Plaintiff's Memorandum of Law*, ECF No. 20, pp. 21–22; *Plaintiff's Reply Brief*, ECF No. 22, p.

26. Plaintiff, who bears the burden at step four, *see Smith*, 631 F.3d at 634, simply has not

established that the ALJ's failure to weigh Dr. Dwyer's opinion is anything other than harmless

error. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an

error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he

party seeking reversal normally must explain why the erroneous ruling caused harm."); *Padgett*

*v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018)

("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand

what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces

of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not

assemble arguments for a party from fragments."). Accordingly, the ALJ's alleged error in this

regard will not serve as a basis for undermining the RFC and remanding this action. *See Pickerin*

*v. Colvin*, No. 14-6130, 2016 WL 5745103, at *5 (D.N.J. Sept. 30, 2016) (affirming the ALJ

decision where "Plaintiff does not offer any specific limitations that the ALJ should have

included in the RFC assessment . . . [and b]ecause it is Plaintiff's burden to show that the ALJ's

finding of residual functional capacity was not supported by substantial evidence, and Plaintiff

has not identified any specific error").

### 2. J. Theodore Brown, Jr., Ph.D.

On January 10, 2017, J. Theodore Brown, Jr., Ph.D., conducted a consultative

examination. R. 427–31. When reviewing Plaintiff's current signs and symptoms, Dr. Brown

noted as follows:

> *She indicates* being sad, unhappy and depressed about not being able to hold a job,
> having to live with her parents, not being able to function normally. She is bored.
> She feels helpless, hopeless, frustrated, overwhelmed. But she denies crying
> episodes for no reason; she cries because of circumstances and situation. She has
> thoughts of death or suicide, but no plans or intentions.
>
> *Energy level is down. She usually just stays at home, withdrawn in her room, on
> the couch, watches TV.*
>
> Sexual energy and interest in activity has been none for more than a decade.
>
> Mood is down, sad, but she denies any agitation, anger, physical or violent
> behavior.
>
> Memory for conversations, instructions, tasks that she is supposed to complete,
> where she places things is poor. She has to write things down and then forgets where
> she put the paper that she wrote the reminders on. She forgets why she goes from
> one location to another. *She has very poor recall, retention, focus and
> concentration. She denies panic and anxiety attacks.* But she picks at her skin, bites
> her nails, and grinds her teeth manifestation of tension, stress, and general anxiety.
>
> Claimant denies any thought disturbance or other behaviors, thoughts or feelings
> that require the attention of a psychiatrist or a psychologist.

R. 428 (emphasis added). Dr. Brown noted that Plaintiff was pleasant and cooperative

throughout the mental status examination and that her overall presentation was adequate. *Id.*

Plaintiff's hygiene was adequate, she had appropriate eye contact, and her gait, posture, and

motor behavior were normal. *Id.* Dr. Brown further noted as follows:

> **Proverb Interpretation**: When asked to interpret proverbs, Claimant's responses
> were as follows: You shouldn't judge a book by its cover – "Be nice." Don't count

your chickens before they hatch and no need to cry over spilled milk - She did not know. **Information**: Claimant's responses to information were as follows: Number of months in a year – "12." Thermometer – "Temperature." Direction of sunrise - She did not know. **Memory**: Claimant could remember three of three items immediately and none of three after five minutes. **Digit Span**: Four digits forward and three digits backwards. **Calculations**: 4 + 3 = 7, 11 - 5 = "5", 3 x 4 = "7" and 18/3 = "7". **Serial 7s**: Claimant could not accurately count backwards from 100 by 7s or from 30 by 3s. **Judgment**: If she saw smoke coming from her neighbor's house - She would "call the fire department." Wallet found on the floor in the store - She would "turn it in." Names in the phonebook being in alphabetical order – "You can find them." **Similarities and Differences**: Apples and oranges – "They both have A's." Table and chair – "They are made of wood." Piano and guitar – "Instruments." **Speech**: Fluent and clear. She was able to express her thoughts and feelings without hesitation or delay. **Thought Processes**: Coherent and goal directed. No evidence of illusions, delusions, hallucinations or paranoia in the Evaluation setting. **Affect**: Appropriate to thought content with full range of speech associated with thought affect. **Mood**: During the Examination was neutral. **Sensorium**: Clear. **Orientation**: She was oriented to person, place and time. **Cognitive/Intellectual Functioning**: Below Average. **General Fund of Information**: She knew Obama was president. She did not know how many weeks there were in a year. She said that "Newark" was the capital of New Jersey. **Insight**: Fair.

R. 429. Dr. Brown noted that Plaintiff lived with her parents. *Id.* She could dress, bathe, and groom herself, and her mother did the cooking, cleaning, laundry, and shopping. *Id.* Plaintiff could drive and her father helped her manage her money. *Id.* She had friends and a good relationship with family. *Id.* Her hobbies included painting and she spent her time at home, in her room, on the sofa, watching television. *Id.* Dr. Brown diagnosed major depressive disorder; learning disorder, unspecified; generalized anxiety disorder; bruxism; alcohol dependency disorder; and obesity. *Id.* According to Dr. Brown, Plaintiff's prognosis was poor. R. 430. He also characterized Plaintiff as learning disabled and the product of special education and commented that she should not be allowed to manage her own funds. *Id.*

Plaintiff complains that the ALJ did not discuss how he weighed or considered Dr. Brown's opinion. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 21−22; *Plaintiff's Reply Brief*, ECF No. 22, pp. 25−28. According to Plaintiff, Dr. Brown provided work-related

limitations, including findings Plaintiff had poor recall, retention, focus, and concentration; her memory for conversations, instructions, tasks, and where she places things was poor; and that she was learning disabled and should not be allowed to manage her own funds. *Plaintiff's Reply Brief*, ECF No. 22, p. 26. Plaintiff contends that the ALJ's failure in this regard cannot be overlooked because an inability to manage funds "indicates limitations in (1) maintaining concentration and focus, (2) following simple instructions, and (3) performing basic math, just to name a few work functions." *Id*. Plaintiff goes on to argue that a "substantial loss" in the basic mental demands of unskilled work "severely limit[s]" Plaintiff's occupational base, as demonstrated by Dr. Brown's opinion that Plaintiff's memory for conversations, instructions, tasks, and where she places things is poor, which "supports a finding that she would have substantial loss in her ability to understand, carry out, and remember simple instructions and to respond appropriately to supervision, coworkers, and usual work situations." *Id*. at 27.

Plaintiff's arguments are not well taken. Although the ALJ did not expressly weigh Dr. Brown's opinions at step four, the ALJ's discussion at step two demonstrates that he implicitly discounted that examiner's opinions when assessing Plaintiff's limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace. R. 22. The ALJ acknowledged Dr. Brown's finding that Plaintiff recalled three of three items immediately but none after five minutes, that she recalled four digits forward and three digits backwards, and that her intellectual functioning was below average, but the ALJ found that "this was a one time consultative examination" and that Plaintiff's "treating physicians consistently noted that the claimant's memory was intact" and that "[a]ll of these factors are indicative of an individual who retains generally intact functioning and support only mild limitations." *Id*. The ALJ also acknowledged Dr. Brown's finding that Plaintiff had difficulty performing calculations

or serial 3s, but the ALJ similarly found that "this is a one-time examination" and that Plaintiff's "treating physicians noted repeatedly to have normal attention and concentration" and "noted as alert and oriented" and that "[a]ll of these factors are indicative of an individual who retains generally intact functioning and support no limitations." R. 22–23. In other words, the ALJ provided acceptable reasons when implicitly discounting Dr. Brown's opinions in this regard, and the ALJ's consideration provides opportunity for meaningful review. *See* 20 C.F.R. §§ 404.1527(c)(1), (4), 416.927(c)(1), (4); *Kiefer v. Saul*, No. CV 19-547, 2020 WL 1905031, at *3 (W.D. Pa. Apr. 17, 2020) (finding substantial evidence supported the ALJ's decision to assign "little weight" to opinions where, *inter alia*, "[a]s the ALJ noted, on recent mental status exams, [the claimant] presented with fair insight, fair judgment, intact memory, organized thought processes, appropriate and organized thought content, normal speech and she denied suicidal ideations"); *Mowbray v. Saul*, No. CV 18-1049, 2019 WL 3843043, at *5 (W.D. Pa. Aug. 15, 2019) (assigning "little weight" to opinions were, *inter alia*, the ALJ found that they "were inconsistent with other medical records which document 'normal mood and affect; cooperative behavior; good grooming; ability to relate; normal motor behavior; good eye contact; normal speech (fluent and clear, logical and organized); adequate comprehension and expressive languages; normal thought processes (clear and goal directed); normal thought content; normal orientation; intact cognition; intact fund of knowledge; intact memory; and good insight and judgment'" and explaining that "[c]onsistency is a valid reason for crediting or discrediting evidence") (citing 20 C.F.R. §§ 404.1527, 416.927); *Goldie v. Berryhill*, No. CV 16-1186, 2017 WL 3237906, at *3 (W.D. Pa. July 31, 2017) ("[T]he ALJ was recognizing that the consultative examination is a one-time event unlike treatment records which paint a longitudinal treatment history of a plaintiff. 20 C.F.R. § 416.927(c)(1). The type of relationship is an appropriate factor

in weighing medical opinions. 20 C.F.R. §§ 404.1527; 416.927."); *cf. Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness."); *Pohl v. Berryhill*, No. 3:18-CV-11675, 2019 WL 3886974, at *7 (D.N.J. Aug. 19, 2019) (finding that the ALJ's weighing of a medical opinion "is also well supported by substantial medical evidence in the record[,]" including that the claimant's "mental health examinations were unremarkable and she routinely denied ever experiencing delusions, hallucinations, or suicidal thoughts").

Even if the ALJ erred in failing to expressly weigh Dr. Brown's opinions, any such error is harmless. As previously noted, Plaintiff insists that Dr. Brown's opinion that she is unable to manage funds "indicates limitations" in concentration and focus, following simple instructions, and performing basic math and that his opinion that Plaintiff's memory for conversations, instructions, tasks, and where she places things is poor "supports a finding that she would have a substantial loss in her ability to understand, carry out, and remember simple instructions and to respond appropriately to supervision coworkers, and usual work situations." *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 26−27. Dr. Brown, however, never articulated any opinion as to additional limitations flowing from an inability to manage funds or poor memory. R. 427−31. In addition, as previously discussed, the ALJ credited treatment notes that consistently reflect intact or normal memory. R. 22, 25. Plaintiff's attempt to extrapolate from Dr. Brown's comment in this regard therefore amounts to nothing more than rank speculation that will not serve as a basis to remand this action.

### 3.  Aaron Spector, MSN, APN

On February 15, 2017, Aaron Spector, MSN, APN, Plaintiff's treating psychiatric nurse, completed a three-page, fill-in-the-blank, and check-the-box form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." R. 432–34. Nurse Spector used the following scale to assess Plaintiff's abilities: "None," which means absent or no limitations and that if limitations are present, they are transient and/or expected reactions to psychological stressors; "mild," which means a slight limitations, but can generally function well; "moderate," which means more than a slight limitation but the individual is still able to function satisfactorily; "marked," which means a serious limitation where there is a substantial loss in the ability to effectively function; and "extreme," which means a major limitation with no useful ability to function in the particular area. R. 432. As for Plaintiff's ability to understand, remember, and carry out instructions, Nurse Spector opined that Plaintiff had moderate limitations in her ability to understand, remember, and carry out simple instructions; marked limitations in her ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions; and an extreme limitation in her ability to make judgments on complex work-related decisions. *Id*. When asked to identify the factors, *i.e.*, particular medical signs, laboratory findings, or other factors, that support this assessment, Nurse Spector responded that "the greater the detail or pressure[,] the more paralyzing for [Plaintiff.]" *Id*. As to Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting, Nurse Spector opined that Plaintiff had no limitation to her ability to respond appropriately to usual work situations and to changes in a routine work setting; moderate limitation with her ability to interact appropriately with the public; a marked limitation in her ability to interact appropriately with co-workers; and an

extreme limitation in her ability to interact appropriately with supervisors. R. 433. When asked to identify the factors, *i.e.*, particular medical signs, laboratory findings, or other factors, that support this assessment, Nurse Spector responded that "changes and feeling of being monitored are triggers for pt's existing anxiety and mood lability[.]" *Id.* Nurse Spector also opined that Plaintiff has "mild – moderate short term memory loss w/ attention [illegible.]" *Id.* Nurse Spector identified a "full psych evaluation" as supportive of this assessment. *Id.* Asked if Plaintiff's impairments include alcohol and/or substance abuse, he responded "N/A." *Id.* Asked if Plaintiff could manage benefits in her own best interest, Nurse Spector checked the box marked "Yes." R. 434.

On March 14, 2019, Nurse Spector again completed a three-page, fill-in-the-blank, and check-the-box form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." R. 530−32. Using the same scale as the one used in the February 2017 medical source statement, Nurse Spector again assessed Plaintiff's ability to perform work-related activities on a sustained basis. R. 530−31. As to her ability to understand, remember, and carry out instructions, Nurse Spector opined that Plaintiff had no limitation in understanding and remembering simple instructions and a mild limitation in carrying out such instructions; moderate limitations in her ability to make judgments on simple work-related decisions and on complex work-related decisions; and marked limitations in her ability to understand, remember, and carry out complex instructions. R. 530. Asked to identify the factors, *i.e.*, particular medical signs, laboratory findings, or other factors, that support this assessment, Nurse Spector responded that "Donna cannot handle pace & stress in an effective manner, as such, her abilities lessen w/ increased complexity of task[.]" *Id.* As to Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting,

26

Nurse Spector opined that Plaintiff had a moderate limitation in her ability to interact appropriately with the public and marked limitations in her ability to interact appropriately with supervisors and co-workers and respond appropriately to usual work situations and to changes in a routine work setting. R. 531. When asked to identify the factors, *i.e.*, particular medical signs, laboratory findings, or other factors, that support this assessment, Nurse Spector responded, "social & peer interaction [illegible], interaction w/ superiors induce PTSD related paranoia[.]" *Id*. Nurse Spector also opined that Plaintiff's ability to "[m]aintain focus for extended periods of time is markedly impaired[.]" *Id*. Nurse Spector stated that a "full psych evaluation" supported his assessment in this regard. *Id*. To a reasonable degree of medical or psychological probability, Nurse Spector opined that Plaintiff's limitations were present on February 3, 2016. *Id*. Asked if Plaintiff could manage benefits in her own best interest, Nurse Spector checked the box marked "Yes." R. 532.

> In an undated letter addressed to a law firm, Nurse Spector also stated as follows:
>
> I have been treating [Plaintiff] . . . since February 3rd, 2016 for Post Traumatic Stress Disorder (F43 .10) and Obsessive-Compulsive Disorder (F42.2). [Plaintiff] experiences flashbacks, intense anxiety and impulsivity due to her PTSD which compounds her OCD symptomology. Her compulsive need for what she considers to be perfection/completion mixed with the traumatic events from others creates a near paralyzing experience when faced with tasks: even simple ones. As the details increase, her symptoms often do too which becomes a regular occurrence with interactions with peers and superiors. *This unfortunately makes Donna unable to work even on a part time basis* as professional tasks and interactions with others can take up the majority of Donna's physical and emotional energy throughout the day from a psychiatric stand point. From a more practical point of view, her intense episodes of anxiety can result in hours of wasted time daily. In other words, Donna would be panicked and repetitive without accomplishing anything productive.
>
> [Plaintiff] has been compliant with treatment both in making arranged medication management sessions; taking prescribed medications and following psychotherapeutic advice from her therapeutic sessions.

R. 533 (emphasis added).

27

In her written decision, the ALJ considered Nurse Spector's assessments at step four and assigned them "little weight" and "no weight," reasoning as follows:

> The claimant's treating professional, Aaron Spector, MSN, APN, in February 2017, opined that the claimant had no limitations in responding appropriately to usual work situations and to changes in routine work setting; was moderate in understanding, remembering, and carrying out simple instructions and interacting with the public; marked in her ability to make simple work related decisions, in understanding, remembering, and carrying out complex instructions, and interacting with co-workers; and extreme in her ability to make complex work-related decisions and interacting with supervisors (Ex. 7F). However in March 2019, Mr. Spector, opined that the claimant had no limitations in understanding, remembering; mild in carrying out simple instructions; moderate in her ability to make simple and complex work-related decisions and interacting with the public; and marked in understanding, remembering, and carrying out complex instructions, interacting with supervisors and co-workers, and responding appropriately to usual work situations and to changes in routine work setting (Ex. 14F). The undersigned gives little weight to either of these opinions. Mr. Spector's opinions are not consistent with his own progress notes which indicate no significant mental status findings throughout the record and her overall stabilization of symptoms (Exs. 2F/3; 5F/34; 12F/3; 16F/3).
>
> Furthermore, Mr. Spector opined that the claimant was unable to work even on a part-time basis (Ex. 15F). Statements that a claimant is "disabled", "unable to work", can or cannot perform a past job, meets a Listing, or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability (20 CFR § 404.1527(e)(2)). Moreover, the opinion is vague and fails to specify any specific work-related limitations. Accordingly, the undersigned gives this opinion no weight.

R. 26. The Court finds no error with the ALJ's consideration of Nurse Spector's opinions. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not [the claimant] can perform occupational duties is a legal determination reserved for the Commissioner."); *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151,

153 (3d Cir. 2018) ("[a] treating source's[7] opinion is not entitled to controlling weight if it is

'inconsistent with the other substantial evidence in [the] case record.'") (citations omitted);

*Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject

the opinion of a treating physician when it is unsupported and inconsistent with the other

evidence in the record."); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361–62 (3d Cir. 2011)

(stating that "the ALJ was not required to consider [the nurse practitioner's] opinion at all

because, as a nurse practitioner, she is not an 'acceptable medical source'"); *Smith v. Astrue*, 359

F. App'x 313, 316 (3d Cir. 2009) (concluding that, where the treating source's "medical opinion

is contradicted by several pieces of evidence in the record and also contains internal

inconsistencies, it is not entitled to the level of deference otherwise accorded to a treating

physician's opinion"); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008)

("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's

ability to work because the opinion related to the ultimate issue of disability—an issue reserved

exclusively to the Commissioner."); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004)

(concluding that the ALJ appropriately assigned limited weight to a treating physician's opinion

where his "treatment notes, and in particular the treatment notes during the [relevant period],

d[id] not support a finding that [plaintiff] was disabled at any time"); *Smith v. Comm'r of Soc.

Sec.*, No. CV 15-7525, 2016 WL 3912850, at *8–9 (D.N.J. July 19, 2016) (finding that the ALJ's

failure to discuss a nurse practitioner's opinion that the claimant should use supportive measures

was only a harmless error because the ALJ would have been entitled to accord it little weight).

    Plaintiff, however, contends that the ALJ's finding that Nurse Spector's opinion "was

---

[7] "Nurses are not 'acceptable medical sources' under the regulations for claims filed before
March 27, 2017." *Williams v. Saul*, No. CV 17-00234, 2019 WL 5061239, at *3 (D.N.J. Oct. 9,
2019).

vague and failed to specify any work-related limitations" is "unsupported by substantial evidence[,]" citing to evidence that she believes supports—and is consistent with—Nurse Spector's opinion. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 23−24 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 22, pp. 28−29 (citations omitted). Plaintiff's argument is not well taken. As a preliminary matter, as detailed above, the ALJ rejected only Nurse Spector's letter addressed to the law firm that opined that Plaintiff was "unable to work even on a part time basis[,]" R. 533, because it was "vague and fails to specify any specific work-related limitations." R. 26. As previously noted, a claimant's ability or inability to work is a matter reserved to the Acting Commissioner. *Louis*, 808 F. App'x at 118; *Zonak*, 290 F. App'x at 497.[8]

Plaintiff's insistence that Nurse Spector's opinions are consistent with Dr. Brown's opinion and consistent with Nurse Spector's letter, R. 533, is also unavailing. For the reasons previously discussed, the ALJ implicitly discounted Dr. Brown's findings regarding memory and concentration. In any event, the Court must "uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations

---

[8] The Court further notes that, in advancing the argument that Nurse Spector provided work-related limitations, Plaintiff relies on an opinion from this practitioner dated September 23, 2019, which was issued after the ALJ's August 15, 2019, decision; therefore, this opinion was not presented for the ALJ's consideration. *Plaintiff's Memorandum of Law*, ECF No. 20, p. 23 (citing R. 9). Notably, the Appeals Council explicitly rejected this evidence. R. 3 ("You submitted four pages of evidence from Aaron Spector MSN, APN, from September 23, 2019. The Administrative Law Judge decided your case through August 15, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 15, 2019. If you want us to consider whether you were disabled after August 15, 2019, you need to apply again.").

[under the substantial evidence standard].”); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (“When ‘presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.’”) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler*, 667 F.3d at 359; *Zirnsak,* 777 F.3d at 611 (stating that a reviewing court “must not substitute [its] own judgment for that of the fact finder”).

Plaintiff goes on to acknowledge that Nurse Spector is not an acceptable medical source, but nevertheless insists that the ALJ should have considered his long-time treating relationship and specialty as a psychiatric nurse practitioner. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 24–25. This Court disagrees. As previously explained, and as Plaintiff concedes in part, nurses are not acceptable medical sources under the regulations for claims–like Plaintiff's claims–filed before March 27, 2017, and the ALJ therefore was required to consider neither Nurse Spector's opinion nor every factor in 20 C.F.R. §§ 404.1527(c), 416.927(c). *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); *Chandler*, 667 F.3d at 361–62; *Williams*, 2019 WL 5061239, at *3; *Smith*, 2016 WL 3912850, at *8–9. For all these reasons, the ALJ's consideration of Nurse Spector's opinions do not require remand of this action.

### 4. Darrell Snyder, Ph.D.

Darrell Snyder, Ph.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on May 23, 2017. R. 98–127. Dr. Snyder found, *inter alia*, that Plaintiff's severe medically determinable impairments consisted of sleep-related breathing disorders, affective disorders, anxiety disorders, and substance addiction disorders. R. 103, 118. Among other limitations, Dr. Snyder opined that Plaintiff was moderately limited in her ability to understand

and remember detailed instructions and in her ability to maintain attention and concentration for

extended periods. R. 109, 124.

In her written decision, the ALJ considered Dr. Snyder's opinion at step four and

assigned "little weight" to that opinion, reasoning as follows:

> As for the opinion evidence, the undersigned gives little weight to the opinion of
> the Disability Determination Services (DDS) psychological consultant, Darrell
> Snyder, Ph.D. Dr. Snyder opined that the claimant had problems with
> understanding and with memory of more complex information, and in carrying out
> complex tasks but the claimant's ability to sustain concentration and carry out
> routine, repetitive tasks of 1-3 steps was intact; the claimant's ability to handle
> public contact and to cope with co-workers and supervisors would be adequate; and
> the claimant's ability to adapt to changes in the work place would be adequate to
> tolerate the stress of a relatively predictable, routine repetitive work setting (Exs.
> 5A; 6A). The medical record does not support this assessment. Dr. Snyder's opinion
> is not consistent with the medical record, which indicates no significant mental
> status findings throughout the record and her overall stabilization of symptoms
> (Exs. 2F/3; 5F/34; 12F/3; 16F/3).

R. 25–26. In challenging this consideration, Plaintiff points to Dr. Snyder's opinion that

Plaintiff's sleep related breathing disorders, affective disorders, anxiety disorders, and substance

addiction disorders were severe. *Plaintiff's Memorandum of Law*, ECF No. 20, p. 26. She

complains that Dr. Snyder "pointed to the areas of the record" that supported his opinion that

Plaintiff was moderately limited in her ability to understand and remember detailed instructions

and in her ability to maintain attention and concentration for extended periods. *Id.*; *see also*

*Plaintiff's Reply Brief*, ECF No. 22, p. 30. Plaintiff also insists that "the significant limitations

alleged by" her support Dr. Synder's moderate limitations, as do Dr. Brown's findings.

*Plaintiff's Memorandum of Law*, ECF No. 20, p. 26.

The Court is not persuaded that this issue requires remand. As previously discussed, the

ALJ did not deny Plaintiff benefits at step two but continued through the sequential evaluation

process, considered Plaintiff's impairments, thus rendering harmless any alleged error at step

two. R. 23–29; *see also Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6. In addition, and for the reasons previously discussed and discussed in more detail below, the ALJ appropriately implicitly discounted Dr. Brown's findings and discounted Plaintiff's subjective complaints. R. 22, 24–27. Moreover, the RFC specifically limits Plaintiff to, *inter alia*, unskilled, simple, repetitive, and routine work, which sufficiently accommodates any alleged limitation in her ability to understand and remember detailed instructions and in her ability to maintain attention and concentration for extended periods. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208–14 (3d Cir. 2019) (finding that a "simple tasks" limitation can be said to fairly reflect a claimant's "moderate" difficulties in concentration, persistence, or pace where there is a "valid explanation" for such limitation); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."). Notably, Plaintiff points to these two moderate limitations found by Dr. Snyder without explaining why the RFC does not accommodate these limitations, nor does Plaintiff identify any additional functional limitations not already included in the RFC purportedly flowing from Dr. Snyder's opined moderate limitations in this regard. *Plaintiff's Memorandum of Law*, ECF No. 20, p. 26; *Plaintiff's Reply Brief*, ECF No. 22, p. 30. Accordingly, any alleged error in the ALJ's consideration of Dr. Snyder's opinion will not serve as a basis for undermining the RFC and remanding this action. *See Padgett*, 2018 WL 1399307, at *2; *Pickerin*, 2016 WL 5745103, at *5.

In continuing to challenge the RFC determination, Plaintiff also argues that the ALJ failed to properly evaluate her narcolepsy, which she insists requires time-off task and absences

from work. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 14−15; *Plaintiff's Reply Brief*, ECF No. 22, pp. 20−22. This Court disagrees. As previously discussed, the ALJ found Plaintiff's narcolepsy to be severe at step two. R. 21. The ALJ noted that Plaintiff's narcolepsy and associated fatigue were "effectively managed with medications." R. 24; *see also* R. 27 (noting that the record reflected that Plaintiff had sleep apnea with hypersomnia, narcolepsy, fatigue, and adrenal fatigue syndrome, but "with medications and proper adherence to her medications, the claimant was noted as stable, doing okay, sleeping better and improved"). The ALJ nevertheless limited Plaintiff to unskilled, simple, repetitive, and routine work "due to the claimant's fatigue from the narcolepsy," R. 23, and also limited Plaintiff's RFC to no exposure to ladders, ropes, scaffolds and no unprotected heights, no hazardous machinery, *id.*, 27. While Plaintiff points to her subjective complaints and record evidence that she believes supports the limitations of time-off task and absences from work, *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 14−15 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 22, pp. 20−22 (same), the ALJ properly discounted Plaintiff's subjective statements for the reasons discussed below and appropriately resolved any conflict in the medical record. *See Johnson*, 497 F. App'x at 201; *Hatton*, 131 F. App'x at 880.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of Dr. Brown, Nurse Spector, Dr. Dwyer, and Dr. Snyder.

### B.        Subjective Complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 26−29; *Plaintiff's Reply Brief*, ECF No. 22, pp. 30−31. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. §§ 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms), 416.929(c)(3) (same). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[9]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 24. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ further explained as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant's treating records do not support the claimant's severe allegations of disability. The claimant's narcolepsy and fatigue were effectively managed with medications (Exs. 2F/3, 18; 4F/1; 10F/16; 16F/3). She engages in basic duties to care for herself,

---

[9]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

drives, grocery shops, and arts and crafts (Ex. 8E; Hearing Testimony). The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual, as discussed below. All of these inconsistencies call into question the claimant's subjective statements regarding the intensity, persistence, or functionally limiting effects of pain and symptoms.

R. 24−25. The ALJ went on to explain that "[o]verall, the record as a whole contains no significant objective findings related to the claimant's physical impairments, which is not reflective of the substantial limitations alleged." R. 26 (citations omitted). In addition, as previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings. R. 24−26. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, points to evidence that she believes supports her subjective statements, including her hearing testimony, Nurse Spector's letter addressed to a law firm, as well as her statement to Dr. Brown regarding her lowered interests and energy. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 26−29 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 22, pp. 30−31 (same). For the reasons previously discussed, the ALJ properly discounted Plaintiff's subjective statements and Nurse Spector's opinions. Moreover, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton*, 131 F. App'x at 879 ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate

those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). In any event, to the extent that Plaintiff points to evidence that she believes undermines the ALJ's consideration, so long as the ALJ satisfies the substantial evidence standard, the Court will uphold the ALJ's decision even if contrary evidence exists that justifies the opposite conclusion. *Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880. This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### C.      Step Five Determination

Plaintiff also challenges the ALJ's determination at step five of the sequential evaluation process, arguing that the RFC was inconsistent with the jobs identified by the vocational expert. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 30–32; *Plaintiff's Reply Brief*, ECF No. 22, pp. 31–32. For the reasons that follow, Plaintiff's arguments are not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak,* 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting

*Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. Moreover, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the relevant hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 23, 76. The vocational expert responded that the jobs of small parts assembler, electronics worker, and laundry folder would be appropriate for such an individual. R. 76–77. Plaintiff now challenges this testimony, arguing that the RFC limitation of unskilled, simple repetitive and routine work is inconsistent with the definitions of those jobs in the Dictionary of Occupational Titles ("DOT"),[10] which requires reasoning level 2. *Plaintiff's*

---

[10] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs

*Memorandum of Law*, ECF No. 20, pp. 31–32; *Plaintiff's Reply Brief*, ECF No. 22, pp. 31–32.

However, Plaintiff's counsel never objected to or challenged the vocational expert's testimony in this regard at the administrative hearing. R. 75–79. Plaintiff's current attempt to raise these challenges therefore comes too late and will not serve as a basis to remand this matter. *See Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."); *Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the ALJ's ruling).

However, even if the Court considered the merits of Plaintiff's step five challenge, that challenge will not provide a basis for remanding this action. Plaintiff argues that the restriction to work involving "simple instructions" is inconsistent with the DOT definitions for small parts assembler, electronics worker, and laundry folder, occupations that require reasoning level 2, *i.e.*, an ability to carry out "detailed" instructions. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 31–32; *Plaintiff's Reply Brief*, ECF No. 22, pp. 31–32. Plaintiff's argument is not well taken.

---

generally consult to determine whether there are any jobs that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

"The qualification categories listed by the DOT for each job include the job's Strength level,

General Educational Development ("GED") level, and its Specific Vocational Preparation

("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C, DOT). "GED measures 'those

aspects of education (formal and informal) which are required of the worker for satisfactory job

performance.'" *Id*. "GED is broken into three categories: (1) reasoning development, (2)

mathematical development, and (3) language development. . . . Reasoning levels in the DOT

range from level 1 to level 6." *Id*. (citing Appendix C, DOT). GED reasoning level 1 applies

"commonsense understanding to carry out simple one- or two-step instructions" in "standardized

situations with occasional or no variables in or from these situations encountered on the job."

Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry

out detailed but uninvolved written or oral instructions" in "problems involving a few concrete

variables in or from standardized situations." *Id*. "SVP levels, on the other hand, measure the

skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p,

2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9"

and "[t]he DOT skill levels correspond with the second source of information relied on by the

Commissioner: the CFR." *Id*. (citing SSR 00–4p). The CFR categorizes occupations into three

classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)−(c). "Unskilled work is

work which needs little or no judgment to do simple duties that can be learned on the job in a

short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not

require doing the more complex work duties," and "[s]killed work requires qualifications in

which a person uses judgment to determine the machine and manual operations to be performed

in order to obtain the proper form, quality, or quantity of material to be produced." *Id*. at §

404.1568(a), (b), (c). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work

corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

While Plaintiff now urges this Court to find that the reasoning level 2 associated with the jobs of small parts assembler, electronics worker, and laundry folder exceed the RFC for simple and routine work, the United States Court of Appeals for the Third Circuit has held that a job with a reasoning level 2 does not "contradict the mandate that [the claimant's] work be simple, routine and repetitive." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004); *see also Jones v. Astrue*, 570 F. Supp. 2d 708, 716 (E.D. Pa. 2007) (finding no conflict between simple and routine tasks and the definition of reasoning level 2) *aff'd*, 275 F. App'x 166, 168 (3d Cir. 2008)). The Third Circuit has also held that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618. The vocational expert in this case expressly testified that her testimony was consistent with the DOT except that the DOT did not address mental limitations, off-task behavior, and absenteeism in the workplace, on which points she relied on her education, training, and knowledge of how jobs are performed. R. 78. As previously noted, Plaintiff's counsel did not object to the vocational expert's testimony nor did she otherwise identify a conflict between such testimony and the DOT. *See generally* R. 75–79. Under these circumstances, to remand this action would require that the Court disregard this uncontroverted evidence and—contrary to Third Circuit authority—establish a bright-line rule in this area. *See Zirnsak*, 777 F.3d at 618. This the Court declines to do. Based on the record presently before this Court and the applicable law, the Court concludes that the ALJ in this case was entitled to rely on the vocational expert's uncontroverted testimony at step five. *See id.*; *cf. Money*, 91 F. App'x at 215; *Dance v. Comm'r of Soc. Sec.*, No. 1:20-CV-03141-NLH, 2021 WL

3144696, at *9 (D.N.J. July 26, 2021) (stating that "[t]his Court has also addressed - and rejected - " the claimant's argument that "the ALJ erred by finding Plaintiff to be capable of performing two of the jobs . . . because the DOT lists these jobs as having a reasoning level of 2, which is a higher level than the RFC's requirement that Plaintiff be limited to jobs with only simple instructions and tasks") (citations omitted); *Soto v. Comm'r of Soc. Sec.*, No. CV 18-14165, 2020 WL 7022652, at *8 (D.N.J. Nov. 30, 2020) ("Where, as here, plaintiffs were limited to simple, repetitive tasks, courts have repeated[ly] found that the plaintiffs are at least suited for jobs that require Reasoning Level 2.") (citations omitted); *Rafine v. Comm'r of Soc. Sec.*, No. 1:19-CV-14215, 2020 WL 3073829, at *8 (D.N.J. June 10, 2020) ("Short of the ALJ repeating the exact phrase used by the DOT in its definition of GED level 2, something which the ALJ is not required to do, Plaintiff offers no other way the ALJ could have articulated the 'simple, routine tasks' limitation differently so that the limitation would align with a GED level 2 job."); *Molina Virola v. Comm'r of Soc. Sec.*, No. 18-CV-4778, 2020 WL 362747, at *4 (E.D. Pa. Jan. 22, 2020) ("The reasoning level determined by the ALJ was not limited to the ability to follow simple one or two-step instructions, which might trigger concern about her ability to perform jobs that require reasoning level 2. . . . Instead, the ALJ determined that [the claimant] can perform routine tasks and make simple work-related decisions. Such a limitation does not disqualify the plaintiff from work that requires reasoning level 2[.]") (citations omitted); *Montgomery v. Berryhill*, No. CV 17-0770, 2018 WL 1317856, at *5 (D.N.J. Mar. 14, 2018) (finding that "the ALJ's reliance on vocational expert testimony was "inherently reasonable" even though the claimant argued that "the ALJ needed an explanation from the [vocational expert] as to how the identified jobs—all with a DOT reasoning level of two, and thus allegedly beyond Plaintiff's mental abilities—comported with Plaintiff's deficiencies" because "Third

44

Circuit precedent has established that level two jobs do not outright conflict with a requirement for simple, routine, and repetitive work") (citations omitted).[11] Accordingly, Plaintiff has not persuaded this Court that remand is required on this basis.

## D.  Constitutionality of Appointment

Finally, Plaintiff challenges the constitutionality of the Appointment of the Commissioner, arguing that it violates the separation of powers. *Plaintiff's Memorandum of Law*, ECF No. 20, pp. 32–34; *Plaintiff's Reply Brief*, ECF No. 22, pp. 1–20. This Court, however, recently rejected Plaintiff's counsel's law firm's argument in a different case, reasoning as follows:

> The Plaintiff alleges that the Social Security proceedings in their entirety were constitutionally defective because of the appointment of Andrew Saul as Commissioner of the Social Security Administration. (ECF 10 at 31). The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers clause to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 15 at 36). Plaintiff argues that because of this violation, the appointed ALJ and the Appeals Council did not have constitutional authority to render a decision on Plaintiff's case. (ECF 10 at 32).
>
> While Plaintiff argues to the contrary, the Supreme Court has already stated that there is no basis to conclude that an appropriately appointed official does not have

---

[11] It is true that this and other district courts in this circuit have remanded actions because of an inconsistency between the identified jobs and the DOT's reasoning levels, but those cases are distinguishable. *See, e.g., Susan A. v. Comm'r of Soc. Sec.*, No. CV 21-07949, 2022 WL 2304666, at *8–10 (D.N.J. June 27, 2022) (remanding where the vocational expert testified that a limitation to simple instructions would preclude the ability to carry out detailed written and oral instructions and the vocational expert identified jobs with a reasoning level 2); *Thomas v. Kijakazi*, No. CV 21-5153, 2022 WL 1747024, at *2 (E.D. Pa. May 31, 2022) (remanding where the vocational expert testified that the claimant, "who was limited to simple, routine tasks, would not be able to carry out detailed written and oral instructions" and the jobs identified by the vocational expert and adopted by the ALJ "all carry reasoning levels of at least two"); *Vickers v. Comm'r of Soc. Sec.*, No. CV 21-1093, 2022 WL 1620076, at *2 (W.D. Pa. May 23, 2022) (reflecting a RFC that limited the claimant to "unskilled work at the SVP 1 or 2 levels" and "to one or two step instructions" and remanding where jobs identified by the ALJ have a GED reasoning level 2" and "at the very least, [] the record presents a potential conflict that must be resolved").

the authority to carry out the functions of the office, even if his or her position was designed by Congress to impermissibly impinge on the President's right to removal at will. *Collins v. Yellen*, ––– U.S. ––––, 141 S. Ct. 1761, 1787-88, 1788 n.23, 210 L.Ed.2d 432 (2021) (plurality opinion) ("As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of his office.").

> The Appointment Clause cases do not help the shareholders either. These cases also ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an office must be properly appointed before he can legally act as an officer.... Here, "[a]ll the officers who headed the FHFA during the time in question were properly appointed." There is thus no barrier to them exercising power in the first instance.

*Id*. at 1793 (Thomas, J. concurring) (citations omitted).

Similarly, the Court addressed that the idea that the "taint" of the "mere existence" of the offending removal provision flows down through the executive power exercised by the officer was unavailing. *Id*. at 1788, 1793 ("[W]e have not held that a misunderstanding about authority results in a constitutional defect where the action was otherwise lawful.").

The plurality opinion addresses the most pressing issue: that there must be an adequate nexus between the unconstitutional provision and the case at bar. *See id*. at 1779 ("for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of the law that is challenged."). So too do the concurring opinions of Justices Thomas and Kagan: "I write separately because I worry that the Court and the parties have glossed over a fundamental problem with removal-restriction cases such as these: The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract." *Id.* at 1789 (Thomas, J. concurring). Similarly, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." *Id.* at 1802 (Kagan, J. concurring). *See also Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has sufficiently established a concrete injury inflicted by 42 U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final decision of finding the Plaintiff not disabled and the Appeals Council's denial of review. Without standing, there is no "case or controversy" to be decided. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits. (ECF 10 at 32).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises "'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act. *Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *10, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); *see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Thus, this Court does not have the authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal connection between the harm of the ALJ's decision and the impermissible removal provision. As discussed above, and as found by other courts, the mere "taint" of the head of an agency does not establish a sufficient nexus for standing. *See Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *——, 2022 U.S. Dist. LEXIS 116234, at *33-34 (D.N.J. Jun. 30, 2022) (citing *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010, at *6-7 (E.D. Pa. April 18, 2022) ("Justice Alito specified in Collins that Seila Law's holding on standing 'does not mean that actions taken by such an officer are void ab initio and must be undone.' ... [I]t is not difficult to see that Collins requires Andino to demonstrate a nexus between the decision denying her disability benefits and 42 U.S.C. § 902(a)(3)."); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case). As a result, the requisite nexus is not met, and the Court denies Plaintiff's appeal on this ground."); *see also Ford v. Kijakazi*, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr. 22, 2022) (denying separation of powers claim because plaintiff failed to show "harm caused by Saul exercising authority he retained by virtue of the unconstitutional removal clause.").

As Justice Kagan noted in Collins, for the Court to redress an injury due to an agency decision made by an agency headed by a single executive subject to an impermissible for-cause removal protection, that agency's decision would need to "capture a President's attention." *Collins*, 141 S. Ct. at 1801-02. Justice Kagan specifically noted that the "mass" of Social Security Administration decisions would likely not create a harm that would allow for redress. Id. ("[O]nly when the President's inability to fire an agency head affected the complained-of decision. Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul. (ECF 16 at 18). Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy

that was utilized by up to 25 percent of the agency's workforce, not repaired the SSA's relationships with relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

*Id.*

First, these harms listed in the news article quote are general and do not show the required concrete, personal, and causal harm required to establish standing. To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins*, 141 S. Ct. at 1779 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *see also Kwasnik v. Kijakazi*, No. 21-08537, 2022 WL 2358424, at *11 (D.N.J. Jun. 30, 2022).

Plaintiff does not point to a specific legal application, policy, or decision that the ALJ or Appeals Council rendered that had any effect on this case except for the overall denial of benefits, which as explained above was sufficiently supported by the record. *See Johnson v. Kijakazi*, No. 21-2372, 2022 WL 2342569 at *13, 2022 U.S. Dist. LEXIS 114766 at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted). The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid.

*John G. v. Comm'r of Soc. Sec*., No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12

(D.N.J. Aug. 25, 2022). This decision is consistent with this Court's decisions in other cases

considering similar challenges to the constitutionality of the appointment of the Commissioner.

*See Sheree J. v. Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–11 (D.N.J. Aug.

9, 2022) (same); *Rebecca L. v. Comm'r of Soc. Sec*., No. 1:21-CV-13848, 2022 WL 3025908, at

*13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any connection between

the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff

benefits, and nothing commands us to vacate the decisions below on that ground. . . . Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand or reverse the ALJ's decision absent a showing of compensable harm.") (internal quotation marks and citations omitted); *Daniel M. v. Comm'r of Soc. Sec.*, No. CV 21-10533 (RMB), 2022 WL 2952912, at *5–7 (D.N.J. July 26, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision.") (internal quotation marks and citations omitted); *Margaret S. v. Kijakazi*, No. CV 21-13556 (SDW), 2022 WL 2753475, at *8–9 (D.N.J. July 14, 2022) ("Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her benefits claim or affected the determination of her benefits in any way. . . . As such, further consideration from this Court on Plaintiff's 'separation of powers' argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not warranted."); *Kwasnik v. Kijakazi*, No. 3:21-CV-08573, 2022 WL 2358424, at *8–11 (D.N.J. June 30, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision."); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case.")). Nothing in Plaintiff's briefing in the instant case persuades this Court that the reasoning in these cases was erroneous. The Court therefore adopts that reasoning and concludes that Plaintiff has not established that remand is appropriate on this basis.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 21, 2022                 *s/Norah McCann King*
                                          NORAH McCANN KING
                             UNITED STATES MAGISTRATE JUDGE